1

ALAN R. SMITH, ESQ., #1449
Law Offices of Alan R. Smith

2

505 Ridge Street
Reno, Nevada 89501

3

Telephone: (775) 786-4579
Facsimile: (775) 786-3066

4

**email: mail@asmithlaw.com**

*ELECTRONICALLY FILED*
*October 20, 2006*

5

Attorney for Debtor

6

7

8

UNITED STATES BANKRUPTCY COURT

9

DISTRICT OF NEVADA

10

—ooOoo—

11

12

In Re:

Case No. BK-N-05-52562-GWZ
Chapter 11

13

PALLAS RESOURCE CORPORATION,
a Nevada corporation

14

Debtor.

15

16

_____/

17

# DEBTOR'S

18

# PLAN OF REORGANIZATION

19

20

21

22

23

24

25

26

27

28

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada 89501
(775) 786-4579
(775) 786-3066 FAX

1.     **INTRODUCTION**

Debtor, PALLAS RESOURCE CORPORATION, a Nevada corporation(hereinafter "PRC" or "Debtor"), filed its petition for relief under Chapter 11 of the Bankruptcy Code on August 18, 2005.  This Plan of Reorganization (the "Plan") is a proposal to creditors to resolve the debts owed on the date of filing the petition.

The Plan must receive creditor approval and the Court must find that it meets the requirements of the law in order to be confirmed.  If this Plan is not confirmed, then the Court may allow:

A.     The case to be dismissed;

B.     The Debtor and others to draft another plan; or

C.     The case to be converted to a Chapter 7 proceeding, with the assets of the Debtor being sold in liquidation and the proceeds distributed in accordance with the Bankruptcy Code.

Creditors are reminded that the Debtor has prepared and filed a Disclosure Statement that provides information about the Debtor and its past operations.

2.     **DEFINITIONS**

Whenever from the context it appears appropriate, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, the feminine and the neuter.  Any capitalized term not defined herein that is defined in the Bankruptcy Code shall have the meaning ascribed to it in the Bankruptcy Code.  Unless the context requires otherwise, the following words and phrases shall have the meanings set forth below when used in this Plan:

2.1.    Administrative Claim: Collectively, (a) any cost or expense of administration of the Chapter 11 case allowed under Section 503(b), 507(a)(1) or 507(b) of the Bankruptcy Code,  and (b) any fees or charges assessed against the Debtor's estate under 28 U.S.C. § 1930.

2.2.    Allowed Administrative Claim:   An Administrative Claim that has been approved after application, notice and hearing, and final order of the Bankruptcy Court.

2.3.    Allowed: With respect to Claims and Interests, (a) any Claim against, or Interest in,

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579
(775) 786-3066 FAX

- 2 -

38051i

1   the Debtor, proof of which is timely filed, or by order of the Bankruptcy Court is not or will not be

2   required to be filed, (b) any Claim or Interest that has been or is hereafter listed in the schedules of

3   liabilities filed by the Debtor as liquidated in amount and not disputed or contingent, or  (c) any

4   Claim allowed pursuant to this Plan; and, in each such case in (a) or (b) above, as to which either (i)

5   no objection to the allowance thereof has been interposed within the applicable period of time fixed

6   by this Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court or (ii) such an

7   objection is so interposed and the Claim or Interest shall have been allowed by a final order (but only

8   to the extent so allowed).  Unless otherwise specified, an "Allowed" claim shall not include (i)

9   interest accrued after the Filing Date, (ii) punitive damages or (iii) any fine, penalty or forfeiture.

10          2.4.    Bankruptcy Code (or "Code"):  This term means the Bankruptcy Code of 1978, as

11  codified in Title 11 of the United States Bankruptcy Code by Public Law 95-598, including all

12  amendments thereof and thereto.

13          2.5.    Bankruptcy Court:  Bankruptcy Court means the United States Bankruptcy Court for

14  the District of Nevada, Reno, or such other court as has jurisdiction of this Chapter 11 case.

15          2.6.    BLM:  Means the U.S. Department of Interior, Bureau of Land Management.

16          2.7    Claim: Any right to (a) payment from the Debtor, whether or not such right is reduced

17  to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed,

18  legal, equitable, secured or unsecured or (b) an equitable remedy for breach of performance if such

19  breach gives rise to a right to payment from the Debtor, whether or not such right to an equitable

20  remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured

21  or unsecured.

22          2.8.    Confirmation Date:  This term will refer to and mean the date on which the Court

23  enters its order confirming this Plan, or any subsequently amended plan of reorganization.

24          2.9.    Confirmation Order: The order of the Bankruptcy Court confirming this Plan.

25          2.10.   Debtor:  The term Debtor means PALLAS RESOURCE CORPORATION, a Nevada

26  corporation, the Debtor in the above-captioned Chapter 11 case.

27          2.11.   Disclosure  Statement:    Disclosure  Statement means the Debtor's Disclosure

28

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579
(775) 786-3066 FAX

380511

Statement filed by the Debtor on October 20, 2006, and any further amendments thereto.

2.12.   Effective Date:  This term will refer to and mean the first business day occurring not less than thirty (30) days following the Confirmation Date, in the event the confirmation is not appealed.  In the event confirmation of Debtor's Plan is appealed, the Debtor shall have the right, but not the obligation, to treat the above date as the Effective Date, notwithstanding the pendency of any such appeal, under circumstances that would moot any such appeal.  Except for earlier performance by the Debtor expressly required in any provision of this Plan, the Debtor's performance under the Plan shall be due on the Effective Date of the Plan; however, the Debtor shall have the right, but not the obligation, to perform any of its obligations under the Plan on a date earlier that the Effective Date if the Debtor deems it appropriate to do so.

2.13.   Filing Date: Means the date the petition was filed commencing this Case, September 25, 2002.

2.14.   Gooseberry Mine: Means the property consisting of 560 acres of fee land, 1 patented Gooseberry claim, and other land interests located in Sections 25, 26 and 36, T19N, R22E of Storey, County, Nevada.

2.15    NDOM:  Means the State of Nevada, Commission of Mineral Resources,  Division of Minerals

2.16.   Plan:  This term shall refer to the Plan of Reorganization proposed by Debtor, together with any amendments or modifications thereto as may hereafter be filed.

2.17.   Post-Confirmation:   Any period of time after the Confirmation Date.

2.18.   Post-Petition: Any period of time after the petition filing date (August 18, 2005) but before the Confirmation Date.

2.19.   Priority Claim: Any Claim which is entitled to priority in payment under Section 507(a) of the Bankruptcy Code.

2.20.   Secured Claim:  Any Claim that is a secured Claim against the Debtor held by any entity, including a judgment creditor of the Debtor, to the extent of the value, as determined either by the Bankruptcy Court pursuant to Section 506(a) of the Bankruptcy Code or as otherwise

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579
(775) 786-3066 FAX

- 4 -

380511

provided in the Plan, or of any interest in the property of the estate securing such Claim.  Secured claims include interest, attorney fees and expenses to the extent allowed under Section 506(b) of the Bankruptcy Code.

2.21    <u>Unversagt</u>: Means Unversagt and Associates Machinery.

2.22.    <u>Unsecured Claim</u>: Any Claim that is not a Secured Claim, Administrative Expense Claim or Priority Claim.

**3.    <u>CLAIMS AND INTERESTS</u>**

3.1    <u>Classification of Claims and Interests</u>

Pursuant to Section 1122 of the Bankruptcy Code, set forth below is a designation of classes of Claims and Interests.  Administrative Claims and Priority Claims of the  kinds specified in Sections 507(a)(1) and 507(a)(8) of the Bankruptcy Code have not been classified and are excluded from the following classes in accordance with Section 1123(a)(1) of the Bankruptcy Code.  Exhibit A attached hereto lists all of the Debtor's Secured, Priority and Unsecured Claims.

Class 1:    Allowed Claim of Panore Holding Corporation as secured by the Gooseberry Mine.

Class 2:    Allowed Claims of Storey County for real and personal property taxes.

Class 3:    Allowed Claims of Administrative Agencies, including NDOM and BLM.

Class 4:    Allowed claims of **unsecured creditors** of the Debtor not entitled to priority under § 507 of the Bankruptcy Code and not otherwise included in any other class hereof, including, without limitation, claims which may arise out of the rejection of executory contracts.

3.2    <u>Unimpaired Classes</u>

Only Class 1 is unimpaired under the Plan.

**4.    <u>TREATMENT OF CLAIMS AND INTERESTS</u>**

4.1    <u>Class 1 (Panore Holding Corporation)</u>

The Class 1 creditor shall retain its security interest in the Goosberry Mine.  The terms and conditions of the security interest of the Class 1 creditor shall remain in full force and effect, and are not altered by this plan.

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579
(775) 786-3066 FAX

- 5 -

380511

4.2     Class 2 (Storey County)

Class 2 claims shall receive payment in full of their claims, without interest, by either:

(A) pro rata quarterly payments commencing no later than one (1) year from the Confirmation Date for a period of thirty (30) months.  The amount of the quarterly payments to each Class 2 creditor shall be determined by dividing the total amount of allowed Class 2 claims by twelve (12), being the total number of quarterly payments to Class 2 claims under this Plan; or

(B) in the event Debtor's wind and solar power plant development efforts are unsuccessful, Debtor shall, beginning eighteen (18) months from the Confirmation Date, commence efforts to market and sell the Gooseberry Mine, with the proceeds of such a sale to be used to pay Class 2 claims in full by no later than three (3) years from the Confirmation Date.

4.3     Class 3 (Administrative Agencies)

The Class 3 creditors shall retain their security interest in Debtor's personal property.  Upon the completion of the requested accounting by Unversagt, as described in section 7 of the Disclosure Statement, Debtor shall take such action as is necessary to continue the sale of its personal property.  In any event, Class 3 creditors shall receive payment in full of their claims, without interest, by either:

(A) pro rata quarterly payments commencing no later than one (1) year from the Confirmation Date for a period of thirty (30) months.  The amount of the quarterly payments to each Class 3 creditor shall be determined by dividing the total amount of allowed Class 3 claims by twelve (12), being the total number of quarterly payments to Class 3 claims under this Plan; or

(B) in the event Debtor's wind and solar power plant efforts are unsuccessful, Debtor shall, beginning eighteen (18) months from the Confirmation Date, commence efforts to market and sell the Gooseberry Mine, with the proceeds of such a sale to be used to pay Class 3 claims in full by no later than three (3) years from the Confirmation Date.

4.3     Class 4 (Unsecured Creditors)

The Allowed Class 4 claims shall receive payment in full of their claims, without interest, by no later than three (3) years from the Confirmation Date.

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579
(775) 786-3066 FAX

380511

5.    **TREATMENT OF UNCLASSIFIED CLAIMS**

5.1    Administrative Claims

Claims arising during the administration of the Debtor's Chapter 11 case and entitled to priority under Section 507(a)(1) of the Bankruptcy Code are not classified under the Plan. Holders of such claims shall be paid in full on the latter of the Effective Date, or fifteen (15) days after entry of an order creating an Allowed Administrative Claim. Administrative claimants may elect to waive any right to payment under this Plan.

5.2    Priority Claims

Holders of Allowed Priority Claims shall be paid in full within two (2) years from the Confirmation Date.

5.3    Fees to the United States Trustee

All fees required to be paid to the United States Trustee will be paid in full upon confirmation of the Debtor's Plan, and shall remain current until the case is fully administered, closed, converted or dismissed, whichever occurs first.

6.    **MEANS OF IMPLEMENTING AND FUNDING THE PLAN**

6.1    Prosecution of Turnover Rights

Debtor has filed a Motion For Turnover and Accounting, which is set for hearing on October 20, 2006. The purpose of this Motion is to ultimately recover certain funds belonging to Debtor, which are being held by either NDOM or Unversagt.

Specifically, on August 20, 1999, the NDOM initiated litigation against PRC and its President, William T. Jordan in the First Judicial District Court of Nevada, Carson City, as Case #99-01142A in Department II. NDOM asserted claims for breach of an Indemnity Agreement dated August 1, 1995, and for the nonpayment of reclamation bond premiums.

Ultimately, NDOM accepted an Offer Of Judgment made by the Debtor, and judgment was entered on May 4, 2000 (hereinafter the "Judgment"). The Judgment granted NDOM a judgment of $269,195, plus $6,000 in costs and attorney's fees. Recovery of the judgment would be by the sale of certain of the Debtor's personal property and other assets of the Gooseberry Mine. Unversagt was

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada 89501
(775) 786-4579
(775) 786-3066 FAX

380511

employed to act as the custodian and liquidator of the assets and was entitled to a commission of 15% of the sales price of each item. The balance of the sales proceeds divided were to be divided equally between the Debtor and the NDOM until the NDOM and the Debtor had received the sum of $100,000. Thereafter the NDOM would receive 75% of the balance of net sale proceeds until the judgment amount of $269,195, plus $6,000 in costs and attorney's fees, was paid in full. On May 2, 2002, an Order Amending Judgment ("Amended Judgment") was entered, which, among other things, required that Unverzagt provide the NDOM and the Debtor with a full and complete accounting of all sales including the description of the property, sales proceeds and name of buyer.

Unverzagt conducted sales of a substantial amount of the Debtor's personal property. The Judgment required Unverzagt to make a distribution to the parties at least once a month, with each distribution to be accompanied by an accounting of the property that was sold and the sales price of each item. The Amended Order also required full and complete accountings of sales. Despite these requirements, Unverzagt failed to provide both accountings and distributions to the Debtor. According to the NDOM, it has received slightly more than $85,000 from the sale of Gooseberry Mine assets, while the Debtor has only received approximately $66,000. In addition, Debtor believes substantial property has been removed from the Gooseberry Mine without accountings or compensation.

The Debtor's Motion For Turnover And Accounting seeks a Bankruptcy Court order requiring the NDOM and Unversagt to account for all assets sold and the proceeds therefrom, as well as to account for all personal property under their possession or control that has not yet been sold. That motion was heard by the Court on Friday, October 20, 2006, at which the Court ordered Unversagt to prepare a formal accounting.

The Debtor believes that substantial sales have occurred for which the proceeds have been distributed to the NDOM without the appropriate portion being distributed to the Debtor. The Debtor is contemplating the initiation of an action to recover amounts due to it and will be in a better position to assess those claim upon receipt of a full accounting by NDOM and Unversagt. Based on the information currently in Debtor's possession, the minimum amount of recovery from these efforts will

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579
(775) 786-3066 FAX

be $19,000, which figure is based on the difference between the amounts paid to NDOM and the Debtor from the sale of Debtor's personal property. If all of the property removed from the Gooseberry Mine is fully accounted for, Debtor believes it may recover in excess of $550,000.

One half of all proceeds turned over to Debtor will be paid to Class 3 claims, until paid in full, and then Class 2 and 4 claims until paid in full. The other half of proceeds turned over to Debtor shall be used to finance the Debtor's litigation and/or the Debtor's efforts to develop a wind and solar power plant at the Gooseberry Mine.

6.2    Continued Sale Of Debtor's Personal Property

As noted in section 6.1, above, the Debtor still has substantial personal property assets that have not been sold. As detailed in Schedule B to Debtor's Bankruptcy Petition, the estimated fair market value of the Debtor's remaining assets is approximately $616,800. Upon recovering missing assets, as detailed in section 6.1, Debtor will take all actions necessary to continue the sales of its assets. It is important to note that virtually all of the Debtor's assets are intended to be used in mining operations and, therefore, their sale will not impact the Debtor's efforts to develop a wind or solar power facility at the Gooseberry Mine.

One half of all proceeds from the sale of Debtor's personal property shall be paid to Class 2 claims, until paid in full, and then Class 3 and 4 claims until paid in full. The other half of proceeds turned over to Debtor shall be used to finance the Debtor's litigation and/or the Debtor's efforts to develop a wind and solar power plant at the Gooseberry Mine.

6.3    Prosecution of Claims By The Debtor

PRC believes, and has evidence to support its belief, that substantial assets of the Gooseberry Mine have been removed from the property without the permission of, or compensation to, PRC. PRC anticipates initiating litigation to recover the fair market value of all property stolen from the Gooseberry Mine. One half of all litigation proceeds recovered by the Debtor shall be retained by the Debtor to finance its development of a wind and solar power plant at the Gooseberry Mine. The other half of litigation proceeds shall be evenly distributed to Class 2, 3 and 4 claims, with such funds being disbursed pro rata to the individual claimants, until paid in full.

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579
(775) 786-3066 FAX

- 9 -

380511

### 6.4    Joint Venture Development Of Wind And Solar Power Plant

PRC is in negotiations with Mariah Energy Corporation ("Mariah") for a co-venture development of a Wind Energy Research And Development Facility. *See Exhibit A hereto.* Dr. Randolph Wolf, Director of Corporate Research and Development for Mariah has visited the Gooseberry Mine and has determined that the Gooseberry Mine is an ideal location for a Mariah Research and Development facility. Mariah has determined the following with regard to the suitability of the Gooseberry Mine for a Research and Development Facility:

a.    **Location** - Situated directly off of Interstate 80, a few miles east of Reno, Nevada, and with a new exit ramp providing easy access to the Gooseberry Mine, it is well positioned in a rapidly growing industrial area.

b.    **Size -** At 560 acres, the Gooseberry Mine has sufficient property on which to construct a Research and Development Facility. These facilities would consist of the installation of several new wind turbine designs that incorporate proprietary breakthrough technology owned by Mariah. The hillside terrain of the Gooseberry Mine provide a desirable natural buffer zone and privacy.

c.    **Buildings -** Existing buildings at the Gooseberry Mine provide adequate space for office function, Research and Development testing labs, and light manufacturing, as needed.

d.    **Electrical Power -** As the site was previously used for mining operations, there is an existing electrical substation (5 MegaWatts +/-), which is ideal for the large capacity power line interface required for the wind turbines.

e.    **Revenue -** Because of its close proximity to Reno, Nevada, a power purchase agreement can likely be arranged with Sierra Pacific Power Company for the sale of electrical power produced at the Gooseberry Mine. Energy revenue can likely begin within six to eight months from implementation of the project development.

At this point, the precise terms of any joint venture have not been negotiated. Debtor foresees

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579
(775) 786-3066 FAX

380511

one of three options: (1) a straight joint venture whereby Debtor supplies the Gooseberry Mine real property and improvements and Mariah funds and oversees all necessary development; (2) a lease of the Gooseberry Mine property to Mariah; or (3) an outright sale of the Gooseberry Mine to Mariah.

      6.5    <u>Sale of Part or All of Gooseberry Mine.</u>

If, eighteen (18) months from the Confirmation Date, the Debtor's efforts to finance the Plan, described above, have not produced sufficient funds to begin payments on Class 2 and 3 claims, as described above, the Debtor shall commence full efforts to market and sell the Gooseberry Mine, the proceeds of which shall be used to pay Class 1, 2, 3 and Class 4 claims in full.

## 7.   LITIGATION PROCEEDS

One half of all litigation proceeds recovered by the Debtor shall be retained by the Debtor to finance its development of a wind and solar power plant at the Gooseberry Mine. The other half of litigation proceeds shall be evenly distributed to Class 2, 3 and 4 claims, with such funds being disbursed pro rata to the individual claimants, until paid in full.

## 8.   DEFAULT AND REMEDIES

The Debtor's projections for disbursements under the Plan are based on information currently available to the Debtor. However, there may be unforeseen contingencies and delays. The Debtor shall not be in default of the Plan provided he is in substantial compliance with the time frames and disbursement amounts and dates set forth herein. Any creditor believing that the Debtor is in default under the Plan shall provide written notice to the Debtor and Debtor's counsel of such default. Should the Debtor fail to cure the default within thirty (30) days of the notice, such creditor may bring the matter before the Bankruptcy Court by motion on shortened notice. In the event the Bankruptcy Court finds that the Debtor is not in substantial compliance, which cannot be adequately explained by the Debtor, the Plan shall be in default, and the Court shall issue an appropriate remedy, including conversion to Chapter 7 or dismissal of the case.

## 9.   FEDERAL INCOME TAX CONSEQUENCES OF THE TAX PLAN

The Debtor will incur and pay all federal taxes associated with the operation of Debtor's business as and when such tax liability becomes due.

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada 89501
(775) 786-4579
(775) 786-3066 FAX

- 11 -

38051i

**10.    MISCELLANEOUS PROVISIONS**

(a)    Upon confirmation of the Plan, all property of the estate shall vest in the Debtor free and clear of all claims and interests of the creditors, except for the claims of Class 1 and Class 2.

(b)    The Reorganized Debtor will serve as disbursing agents and shall disburse all property to be distributed under the Plan. The disbursing agents may employ or contract with other entities to assist in or to perform the distribution of the property and shall serve without bond.

(c)    Any property to be distributed under the Plan becomes property of the Debtor Trust if it is not claimed by the entity entitled to it before the latter of one (1) year after confirmation of the Plan, or sixty (60) days after an order allowing the claim of the entity becomes a final order.

(d)    Any creditor who failed to file a proof of claim on or before any Court imposed claims bar date, shall be barred from participating in any distribution under the Plan, and the Debtor shall have no further liability for such claim.

**11.    RETENTION OF JURISDICTION**

The Bankruptcy Court shall retain jurisdiction for the following specific purposes:

(a)    For the purpose specified in § 1142 of the Bankruptcy Code;

(b)    The consideration of claims and such objections as may be filed to the claims of creditors pursuant to § 502 of the Bankruptcy Code, and to file and prosecute any counterclaims against such creditors;

(c)    The fixing of compensation for the parties entitled thereto;

(d)    To hear and determine the amount of all encumbrances or the recovery of any preferences, transfers, assets or damages to which the Debtor's estate may be entitled under applicable provisions of the Bankruptcy Code or other federal, state, or local law;

(e)    To reinstate the automatic stay pending a determination of the amount owed on any secured claim;

(f)    To hear and decide all causes of action now held by the Debtor;

(g)    To hear and decide all adversary proceedings currently pending in the Bankruptcy Court, specifically including the adversary proceeding entitled *Harris v. Honein*, Adversary

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579
(775) 786-3066 FAX

38051i

Proceeding No. 05-5121;

(h)     To resolve any disputes regarding interpretation of the Plan;

(i)     To implement the provisions of the Plan, including all provisions in the Plan which specify the retention of jurisdiction, and to make such further orders as will aid in consummation of the Plan, including the sale of any property after Plan confirmation;

(j)     To adjudicate controversies regarding property of the Debtor's estate and regarding ownership thereof, including adjudication of causes of action which constitute property of the estate;

(k)     To modify this Plan in accordance with § 1127 of the Bankruptcy Code; and

Enter a final decree and order closing the case.

**12.    REQUEST FOR APPLICATION OF 11 U.S.C. § 1129(b)**

The Debtor requests the Court to find that the provisions for dissenting classes provide for fair and equitable treatment of said creditors, and to confirm this Plan notwithstanding the requirements of § 1129(a)(8) as to such classes.

**13.    DEBTOR'S DISCHARGE**

The Debtor will receive a discharge pursuant to 11 U.S.C. § 1141(a) upon entry of an order of confirmation, except in the event any creditor or party-in-interest is successful in an objection to discharge action which may be filed.

///
///
///
///
///
///
///
///
///
///

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579
(775) 786-3066 FAX

380511

14.    **MODIFICATION OF PLAN**

The Debtor may modify the Plan with regard to the treatment of any creditor class, in connection with any agreement or settlement with such creditor class or in order to comply with requirements of the Code as established by the Court, provided such modification does not materially adversely affect any other class of creditors.  Such modifications may be reflected in the order confirming the Plan of Reorganization.  Any other modification of the Plan shall be in accordance with § 1127 of the Code.

**DATED** this 20th day of October, 2006.


LAW OFFICES OF ALAN R. SMITH


By:_____/s/ Kevin A. Darby_____
KEVIN A. DARBY, ESQ.
ALAN R. SMITH, ESQ.
Attorneys for Debtor

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579
(775) 786-3066 FAX

- 14 -

380511

# EXHIBIT

# A

# MARIAH ENERGY Development Corporation



PALLAS Resource Corporation                              October 9, 2006
Box 6795
Reno, NE 89513

Mr. Jordan:

Pursuant to our previous conversations this letter is to express Mariah Energy Development Corporation's interest in the use of the Gooseberry Mine property, east of Reno as a Wind Energy Research and Development Facility.

Dr. Randolph Wolf, our Director of Corporate Research and Development has visited the Gooseberry Mine and was allowed a thorough inspection of the property. His report to the MEDC Board of Directors substantiated our earlier thoughts that it would be an excellent location for one of our Research and Development facilities. Some of the considerations reviewed include:

1) **Location** – directly off of Interstate 80 a few miles east of Reno. A new exit ramp provides easy access to the facility. It is well positioned in a rapidly growing industrial area.

2) **Size** - ~560 acres is sufficient property on which to construct our Research and Development facility. R&D facilities will consist of installation of several new wind turbine designs that incorporate proprietary breakthrough technology. The hillside terrain surrounding the property provides a natural buffer zone and the privacy we desire.

3) **Buildings** - Existing buildings on site provide adequate space for office functions, R&D testing labs, and light manufacturing as needed.

4) **Electrical Power** – The site was previously used for mining activities, consequently an electrical sub-station (~5MegaWatts +/-) exists on site which is ideal for the large capacity power line interface required for the wind turbines.

5) **Revenue** - Because of its proximity to Reno, a power purchase agreement can be arranged for sale of electrical power produced on the site, and energy revenue can likely begin within six to eight months from implementation of the project development.

Mariah Energy Development Corp. is engaged in acquiring capital to construct one or more Research and Development Facilities for turbine performance evaluation. Upon funding, with necessary capitol appropriately budgeted, we are interested in pursuing further negotiations with PALLAS Resource Inc. for use of the Gooseberry Mine property as a Wind Energy Research and Development facility.

Sincerely,

Michael Osterhout, President

| Corporate Office | Business & Marketing Office | Engineering & Production |
|---|---|---|
| 326 Washington Avenue | 13702 W. 77th Terrace | 1270 Meadowlake Way |
| Ellsworth KS 67439 | Lenexa, KS 66216 | Monument, CO 80132 |
| 785-472-6099 | | |
| hectorc9051@sbcglobal.net | | |